## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**MICHAEL A. KUHN,**                          :

 **Petitioner**                          :          **CIVIL ACTION NO. 3:15-0015**

 **v.**                          :                    **(JUDGE MANNION)**

**ROBERT GILLMORE,** *et al.*,          :

 **Respondents**                          :

## MEMORANDUM

Petitioner, Michael A. Kuhn, an inmate confined in the Greene State
Correctional Institution, Waynesburg, Pennsylvania, filed the instant petition
for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He
challenges his conviction and sentence imposed in the Court of Common
Pleas of Centre County. Id. The petition is ripe for disposition. For the
reasons outlined below, the petition will be denied.

## I.    Factual and Procedural Background

The facts underlying Kuhn's conviction are contained in the trial court's
March 20, 2010 Opinion in response to matters complained of on appeal.
(Doc. 17-4 at 202). These facts are as follows:

> In the early hours of July 4, 2007, Lisa Hundley returned home
> to her second floor apartment located on 164 East McCormick

Avenue in downtown State College. Ms. Hundley had been out with her friends that night and left the fire escape door open to let in some fresh air. Her sleep was cut short by a man who stood over her and growled, "Don't fuckin' move. I'm going to rob you. I have a knife." The man pushed Ms. Hundley's face down on the mattress and tied both her hands behind her head with tape and electrical cord he severed from a nearby nightstand lamp. When he was done securing Ms. Hundley's arms he tied her ankles together so that she could not move. Lying face down on the mattress Ms. Hundley noticed for the first time that her pillow and mattress had blood on them while the back of her head felt warm and sticky. She could hear the man roaming her apartment while speaking causally about what he was going to take. Ms. Hundley pleaded with the man to take what he needed and to leave her alone.

As she was pleading and crying the man came back into the bedroom, pulled off the comforter covering Ms. Hundley and asked, "Are you naked under there?" "Can I get a feel?" The man inserted his fingers into her vagina. Ms. Hundley was able to convince the man that she had to use the bathroom. The man agreed to let her use the bathroom but refused to untie her. As Lisa Hundley hobbled towards the bathroom she looked at the man and saw his face. He appeared to be in his mid to late twenties. He was white, dark brown hair, slight build and a goatee. He was wearing wire-rim glasses, dark shirt, and a baseball hat on backwards. Of particular importance were his teeth. Ms. Hundley testified that his teeth were misshapen, and yellow, crooked and it looked like some were missing. Ms. Hundley's description of the man's teeth would later lead to Mr. Kuhn's arrest and the matching of his DNA which was collected from Ms. Hundley after a rape kit was taken.

After Lisa Hundley finished in the bathroom Mr. Kuhn followed her back to her bed and pushed her into the same position she had been in and raped her. After raping Ms. Hundley, Mr. Kuhn got up from the bed and started pacing the rooms of the apartment saying, "What to steal? What to steal?" Ms. Hundley testified that Mr. Kuhn repeated this behavior, raping her three times by penetrating her vagina with his penis and also once

penetrating her anus with his penis. Before each rape Mr. Kuhn would remove the cord around her legs and then retie the cord when he was finished. He also checked to make sure her hands were still tightly bound.

After the final rape Ms. Hundley was blindfolded with her own shirt. Ms. Hundley was able to hear Mr. Kuhn rummaging through a bag of metal tools he had brought with him. As Ms. Hundley was face down on her mattress, with her hands bound and unable to protect herself, Mr. Kuhn approached the bed and told her, "Don't fucking move, bitch." Mr. Kuhn then struck Ms. Hundley's skull four or five times with what Ms. Hundley testified felt like a steal two-by-four. When she regained consciousness, she awoke in a puddle of her own blood which had saturated the mattress to the point that it had started to pool. Ms. Hundley was able to untie herself and get to her neighbor's apartment and call the police.

Id.

The following procedural background has been set forth in the Pennsylvania Superior Court's April 30, 2014, Memorandum Opinion, affirming the denial of Petitioner's Post Conviction Relief Act petition:

Following a jury trial on June 26, 2009, Kuhn was convicted of criminal attempt – murder of the first degree, rape, involuntary deviate sexual intercourse, burglary, aggravated assault, terroristic threats, and false imprisonment. Kuhn was subsequently sentenced on September 17, 2009, to an aggregate term of 48 to 96 years' imprisonment. Kuhn appealed his judgment of sentence, which was affirmed by this Court on December 20, 2010. Kuhn's petition for allowance of appeal to the Pennsylvania Supreme Court was denied on June 22, 2011.

On March 16, 2012, Kuhn filed a *pro se* PCRA petition. The PCRA court appointed counsel and counsel then filed an amended PCRA petition. Thereafter, PCRA counsel filed a petition for leave to withdraw and a "no-merit" brief pursuant to

**Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988)(en banc).

After review of the "no-merit" brief, on June 6, 2013, the PCRA court issued notice, pursuant to Pa.R.Crim.P. 907, of its intent to dismiss Kuhn's petition without a hearing. On that same date, the PCRA court issued an order granting counsel's petition to withdraw.

Kuhn filed a response to the PCRA court's Rule 907 notice. The PCRA court subsequently dismissed Kuhn's petition without a hearing. This *pro se* appeal followed.

Kuhn raises the following issues for our review:

A.   WHETHER THE LOWER COURT ERRED IN GRANTING APPELLANT'S PRIOR PCRA COUNSEL LEAVE TO WITHDRAW?

B.   WHETHER THE LOWER COURT FAILED TO APPROPRIATELY CONSIDER APPELLANT'S ISSUES WHEN IT CONDUCTED ITS "INDEPENDENT REVIEW" AND ALSO FOLLOWING APPELLANT'S PRO SE RESPONSE TO THE COURTS NOTICE TO DISMISS?[1]

C.   WHETHER THE LOWER COURT ERRED IN DETERMINING THAT APPELLANT WAS NOT ENTITLED TO RELIEF WITH REGARDS TO TRIAL COUNSEL'S INEFFECTIVENESS?

D.   WHETHER THE LOWER COURT ERRED IN DETERMINING THAT APPELLANT'S SUPPRESSION

---

[1] We can summarily dispose of this issue. In rendering its decision, the PCRA court, conducted an independent review of Kuhn's issues. It reviewed the entirety of the certified record, including Kuhn's PCRA petition, PCRA counsel's no-merit brief, and Kuhn's responses filed thereto. **See** Order, 7/16/13. As such, this issue clearly lacks arguable merit.

*(footnote continued on next page)*

ISSUES WERE NOT ENTITLED TO POST-CONVICTION RELIEF?[2]

(Doc. 17-4 at 315-317, Pennsylvania Superior Court Memorandum Opinion). On April 30, 2014, the Pennsylvania Superior Court affirmed the PCRA court's order dismissing Kuhn's PCRA petition, finding that Kuhn's issues unmistakably lacked arguable merit. Id.

On January 6, 2015, Petitioner filed the instant petition for writ of habeas corpus, in which he raises the following four issues for review:

1. Trial counsel was ineffective for failing to secure and/or utilize a DNA expert during trial.

2. Trial counsel was ineffective for failing to order sentencing transcripts from lower court on direct appeal, so appellate court could not hear issue of excessive sentence on appeal.

3. Violation of Petitioner's Fourth Amendment right against illegal seizure when Petitioner's illegal arrest in companion case was used to hold him to investigate the instant case.

4. Trial counsel was ineffective for failing to object to Detective Aston's testimony during trial.

(Doc. 1, petition).

---

[2] Kuhn's suppression issue has been previously litigated and, as such, it is not eligible for review under the PCRA. **See** 42 Pa.Cons.Stat.Ann. §9544(a)(2). On direct appeal, this Court reviewed the propriety of the trial court's denial of Kuhn's suppression motion and aptly determined that the police had sufficient probable cause to arrest Kuhn. **See Commonwealth v. Kuhn**, 23 A.3d 587 (Pa. Super. 2010)(unpublished memorandum).

**II.**   **Legal Standards of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d

402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Kuhn's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## III.     Discussion

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen, 563 U.S. at 181 (internal quotation marks and citation omitted). The burden is on petitioner to prove entitlement to the writ. Id.

Under 28 U.S.C. §2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The test for §2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under §2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75–76 (quoting Williams, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

The test for §2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," §2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ") (quoting §2254(e)(1)) (citing Miller–El v. Dretke, 545 U.S. 231, 240, (2005)). Importantly, the evidence against which a federal

court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

Petitioner's first three claims are based on trial counsel's alleged ineffectiveness and have been fully adjudicated on the merits during the state court proceedings.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362,

391 (2000)). Therefore, under §2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts. See Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, see Commonwealth v Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to Strickland, see Jacobs, 395 F.3d at 107 n.9.

### A. "Trial counsel was ineffective for failing to secure and/or utilize a DNA expert during trial."

Petitioner claims that the trial court provided funds to hire a DNA expert, and that "first counsel found an expert to help prepare the defense"[3], however, "when trial counsel took over, he was made aware of said expert" and "trial counsel never spoke/used this expert."[4] (Doc. 1 at 5). Specifically,

---

[3] In support of this, Petitioner relies on a May 19, 2014 letter from the Centre County Chief Public Defender explaining that his case was being reassigned from Attorney McGraw to Attorney Blanarik and that in going through Attorney McGraw's notes and calendar, he determined that on July 31, 2008, Attorney McGraw met with a Dr. Holland from Penn State at his office to discuss the PSP Lab results of the DNA testing and Attorney McGraw made the following note:

> 7-31-08 – met w/Dr. Mitchell Holland @ PSU – DNA is not exact match, however, most likely due to abundance of caution @ PSP lab – need raw data from lab.

(Doc. 21 at 56).

[4] The Court notes that although Petitioner was initially represented by Attorney Sean P. McGraw, once Mr. McGraw was no longer employed as a public defender, Petitioner's

*(footnote continued on next page)*

he claims "[a] DNA expert would have helped Petitioner's defense preparation and testimony of things which were never brought up at trial such as:

1) Why the Pennsylvania State Police DNA Report states 'Genetic locus D13S317 was inconclusive due to an insufficient amount of DNA' or why 'Genetic loci D13S317 and Amelogenin were not used in the statistical calculations?[5]
2) Sperm degradation. At trial testimony was given that sperm degrades after 26 hours (the head detached from the tail)(see Trial Transcripts (T.T.), 6/25/09, pg. 335). So how could a

---

case was turned over to Attorney Edward S. Blanarik on September 10, 2008. (Doc. 21 at 56).

[5] The portion of the DNA report that Petitioner challenges reads as follows:

> The DNA profile obtained from the sperm fraction of the rectal swabs (H07-07387-2, Item Q1M) is consistent with a mixture. Lisa Hundley (H07-07387-2, Item K1) and Michael Kuhn (Item K3) cannot be excluded as contributors to this DNA mixture profile in genetic loci CSF1PO, D3S1358, D5S818, D7S820, D8S1179, D16S539, D18S51, D21S11, FGA, Penta D, Penta E, TH01, TPOX, vWA, and Amelogenin.
>
> Genetic locus D13S317 was inconclusive due to an insufficient amount of DNA.
>
> This combination of DNA types is 1 in 177 trillion more likely to have originated from Lisa Hundley (H07-07387-2, Item K1) and Michael Kuhn (Item K3) than from Lisa Hundley (H07-07387-2, Item K1) and another individual in the unrelated Caucasian population; 1 in 3.8 quadrillion times more likely than another individual in the unrelated African American population; and 1 in 490 trillion times more likely than another individual in the unrelated Hispanic population.
>
> Genetic loci D13S317 and Amelogenin were not used in the statistical calculations.

(Doc. 21 at 59).

> sample taken within a few hours of the incident only have a few sperm with tails?
> 3) Or how the characteristics in a body fluid mixture used by the Commonwealth's expert at trial to narrow the donor population could have come from the victim which, was part of the mixture, and thus be incorrectly used to suggest that Petitioner was part of a donor population such as had happened in Miller v. Anderson, 162 F. Supp.2d 1057 (D.C. 7th Cir. 2000), vac'd on other grounds, 255 F.3d 455 (7th Cir. 2001)."

(Doc. 21 at 13). Thus, Petitioner concludes that his due process was violated when he was denied his right to an expert at his trial. Id.

In his No Merit Brief, addressed to the PCRA court, Petitioner's PCRA counsel claims that although funds were secured from the Court to enlist the services of a DNA expert for the defense, trial counsel did not call such an expert. (Doc. 17-4 at 222). He states that due to trial counsel's unexpected death, PCRA counsel was unable to consult with him. (Doc. 17-4 at 226). However, PCRA counsel did have conversations with attendees of a DNA evidence seminar, in an attempt to secure an expert, and was unable to find an expert that would be willing to rebut the claims of those called by the Commonwealth at trial, as the overwhelming response was that it would have been a fruitless endeavor and thus, the decision not to call an expert was a trial strategy on the part of trial counsel. Id.

By Order dated July 16, 2013, the PCRA court , after a thorough review of the record and finding no genuine issues of fact, found that Petitioner was

- 14 -

not entitled to post-conviction relief and dismissed the PCRA petition. (Doc.

17-4 at 266).

The Pennsylvania Superior Court affirmed the PCRA Court's rejection

of Petitioner's claim, finding the following:

> To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. **See Johnson**, 600 Pa. at 346, 966 A.2d at 533. "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id**. This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. **See id**. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id**. Counsel cannot be deemed ineffective for failing to pursue a meritless claim. **See Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (en banc). Likewise, a failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Commonwealth of Washington**, 592 Pa. 698, 712 927 A.2d 586, 594 (2007).
>
> Moreover, in determining whether counsel's actions was reasonable, the court does not consider whether there were other more logical actions counsel could have pursued, but simply examines whether counsel's decision had any reasonable basis. **See id**. As our Supreme Court emphasized, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective" under the law in existence at the time of counsel's act or omission. **See Commonwealth v. Daniels**, 600 Pa. 1, 34, 963 A.2d 409, 429 (2009). "[A] defendant is not entitled to relief simply because the strategy is unsuccessful." **Commonwealth v. Tippens**, 598 A.2d 553, 556 (Pa. Super. 1991) (en banc). "[I]neffectiveness occurs only where the alternative not selected 'offered a potential for success substantially greater than the tactics used'." **Commonwealth v. Clemmons**, 505 Pa. 356, 361 479 A.2d 955, 957 (1984).

Here, PCRA counsel aptly sought leave from the PCRA court to withdraw from representation of Kuhn as he deemed Kuhn's issues related to the ineffectiveness of trial counsel lacked arguable merit. PCRA counsel methodically reviewed the record and filed a proper **Turner/Finley** brief after which the PCRA court independently reviewed the issues Kuhn wished to raise and suitably determined them to be without any merit. As such, we can find no error in the PCRA court's grant of counsel's petition to withdraw as we are in agreement that Kuhn's claims lack arguable merit.

Kuhn's ineffectiveness claims are predicated upon counsel's trial strategy with respect to the calling of witnesses, evidentiary challenges and trial stipulations.

Kuhn first argues that trial counsel was ineffective in failing to call a DNA expert to rebut the Commonwealth's DNA evidence. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the defendant must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced

appellant. **See Commonwealth v. Pursell**, 555 Pa. 233, 258, 724 A.2d 293, 306 (1999). Kuhn must demonstrate than an expert witness was available who would have offered testimony designed to advance his cause. **See Commonwealth v. Wayne**, 553 Pa. 614, 720 A.2d 456, 470-471 (Pa. 1998). "The mere failure to obtain an expert rebuttal witness is not ineffectiveness." **Id**. Additionally, trial counsel will not be deemed ineffective for failing to call a scientific expert merely to critically evaluate expert testimony presented by the Commonwealth. **See Commonwealth v. Chmiel**, 612 Pa. 333, 388, 30 A.3d 1111, 1143 (Pa. 2011).

Here, while the trial court allocated funds to defense counsel to pay an expert to assist with Kuhn's defense, counsel was unable to find an expert willing to rebut the Commonwealth's claims as to the DNA evidence. Thus, it is evidence that an expert witness was unavailable to testify on Kuhn's behalf. As such, trial counsel cannot be deemed ineffective.

(Doc. 17-4 at 317-320, Superior Court Memorandum Opinion).

The Superior Court's adjudication of this claim was neither an unreasonable application of, nor contrary to, Strickland. The Superior Court reasonably concluded that Petitioner's claim failed because no expert would be willing to rebut the Commonwealth's claims as to the DNA evidence. Defense attorneys do not always have to employ expert testimony; rather, "it depends on the specific circumstances of the case." Showers v. Beard, 635 F.3d 625, 633 (3d Cir. 2011). Prejudice resulting from counsel's ineffectiveness "cannot be based on mere speculation about the possibility of finding an expert witness, nor can it be based on mere speculation about

the possible testimony." Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001).

Moreover, Petitioner has failed to identify an expert witness or the purported witness' availability, which is fatal to his claim under governing Pennsylvania law. *Cf.* Day v. Mahally, 230 F. Supp. 3d 420, 426 (E.D. Pa. 2017) (upholding state court's rejection of ineffectiveness claim when, *inter alia*, petitioner failed to identify an expert); Oliver v. Santiago, No. 14-1334, 2017 WL 2735409, at *13-*14 (D.N.J. June 23, 2017) (state court reasonably rejected petitioner's ineffectiveness claim when, *inter alia*, petitioner "produced no report, certification, or affidavit from a potential expert who would have testified [to what petitioner alleged]. It is sheer conjecture that such an expert witness exists."); Johnson v. United States, 759 F. Supp. 2d 534, 544 (D. Del. 2011).

**B. "Trial counsel ineffective for failing to order sentencing transcripts from lower court on direct appeal, so appellate court could not hear issue of excessive sentence on appeal**."

Petitioner states that "following trial sentencing, trial counsel failed to order sentencing transcripts from the lower court on direct appeal so even though trial counsel raised the excessiveness of Mr. Kuhn's 48 to 96 year sentence on direct appeal, by rule, the Appellate courts could not even hear

the issue due to trial counsel's failure to order the needed transcripts for the

court to hear the appeal." (Doc. 1 at 6).

The Superior Court found Petitioner's claim waived, based on the

following:

> Appellant's final issue challenges his sentence as
> manifestly excessive. Upon review, however, we conclude
> that this issue is not reviewable. Appellate review is limited
> to those facts which are contained in the certified record;
> what is not contained in the certified record "does not exist
> for purposes of our review." **Commonwealth v. O'Black**,
> 897 A.2d 1234, 1240 (Pa. Super. 2006). As this Court
> thoroughly summarized in **Commonwealth v. Preston**,
> 904 A.2d 1 (Pa. Super. 2006) (*en banc*), *appeal denied*,
> 591 Pa. 663, 916 A.2d 632 (2007):
>
>> The fundamental tool for appellate review is the
>> official record of the events that occurred in the trial
>> court.
>>
>> ***
>>
>> This Court cannot meaningfully review claims
>> raised on appeal unless we are provided with a full
>> and complete certified record. This requirement is
>> not a mere 'technicality' nor is this a question of
>> whether we are empowered to complain *sua
>> sponte* of lacunae in the record. In the absence of
>> an adequate certified record, there is no support
>> for an appellant's arguments and, thus, there is no
>> basis on which relief can be granted.
>>
>> ***
>>
>> [T]he ultimate responsibility of ensuing that the
>> transmitted record is complete rests squarely upon

the appellant and not upon the appellate courts. Pa.R.A.P.1931.

\*\*\*

With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P.1911(a). . . . When the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for purpose of appellate review. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts.

Preston, 904 A.2d at 6-7 (some internal citations omitted). An appellant's failure to provide the reviewing court with a complete record results in waiver of the claim. **See Commonwealth v. Reed**, 601 Pa. 257, 971 A.2d 1216 (2009) ("We decline to review this issue with an incomplete record and consider the issue to be waived.").

Here the Commonwealth and trial court point out, and a review of the certified record confirms, that Appellant did not request a transcript of the sentencing hearing. **See** Certified Record No. 2 ("SPECIFIC HEARING DATE(S) REQUESTED: June 25 & 26, 2009"). We acknowledge the trial court's efforts in reviewing "the audio tapes of the sentencing hearing and transcrib[ing] the pertinent portions of the sentencing hearing" in order to "fully address [Appellant's sentencing issues] and assist the Honorable Superior Court." Trial Court Opinion, 3/25/10, at 6. In doing so, the trial court provided the reasons that it stated on the record for its sentence on each count. **Id**. at 6-8 (quoting transcribed statement of reasons for each sentence

- 20 -

imposed). Nevertheless, as the Commonwealth posits, omission of the sentencing transcript deprives us of "a complete account of everything that happened during sentencing." Commonwealth's Brief at 37. Under such circumstances, we are unable to conduct a thorough review of Appellant's sentencing claims. Therefore, they are waived.

(Doc. 17-4 at 58-60, Superior Court Memorandum Opinion).

A federal court on a habeas petition will not address a claim under federal law if, when the claim was presented to the state court, the court rejected the claim on a ground that was both "independent" of the federal issues and was "adequate" to support the state court's disposition. A state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate. See Coleman v. Thompson, 501 U.S. 722, 729–30 (1991); Lambrix v. Singletary, 520 U.S. 518, 523 (1997) ("We have nonetheless held that the doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law."). Thus, even though a prisoner may have exhausted his federal claims in the state court without obtaining a decision on the merits, he may be unable to obtain a decision on the merits in the federal courts.

In this case, Kuhn failed to comply with Pa.R.A.P.1911(a), requiring an appellant to order and pay for any transcript necessary to permit resolution

of the issues raised on appeal. As a result, the Superior Court found that Petitioner's failure to assume the responsibility of transmitting a complete record to the appellate court, in accordance with Pa.R.A.P.1931, deemed his issue of excessive sentence waived. The Superior Court's sole reliance on these two rules to dismiss Kuhn's claim is adequate and independent of any federal claim and bars this Court's review of Kuhn's excessive sentence claim. See Tuten v. Tennis, Civ. No. 06-1872, 2007 WL 2221419, at *3 (E.D. Pa. July 31, 2007) (Report & Recommendation, Restrepo, M.J.) (approved and adopted Shapiro, J., Aug. 14, 2008) (failure to provide necessary transcripts results in waiver in state court and default in federal court); Bowen v. Blaine, 243 F. Supp.2d 296, 318 (E.D. Pa. Robreno, J. adopting Report & Recommendation of Scuderi, M.J.) (rule requiring appellant to provide court with transcripts consistently followed). Because Kuhn has failed to establish cause and prejudice, his excessive sentence claim is procedurally defaulted.

The federal court may excuse a procedural default if the petitioner establishes either cause for the default and prejudice resulting therefrom or that a failure to consider the claim will result in a fundamental miscarriage of justice. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Here, Kuhn offers no basis to excuse his defaults. Similarly, he does not claim nor does he offer

any evidence to suggest his actual innocence, nor is there any basis which can be gleaned from the record.

Regardless of Petitioner's default, Petitioner's excessive sentence claim is not cognizable on federal habeas review.

A writ of habeas corpus is available under 28 U.S.C. §2254(a) only on the basis of some transgression of federal law binding on the state courts. Engle v. Isaac, 456 U.S. 107, 119 (1982). Violations of state law, standing alone, will not entitle a petitioner to federal habeas relief, absent a showing that those violations are so great as to be of a constitutional dimension. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (federal habeas courts are not permitted to review questions of state law); Wainwright v. Sykes, 433 U.S. 72, 81 (1977) (questions of state substantive law not cognizable on federal habeas review); Priester v. Vaughn, 382 F.3d 394, 401–02 (3d Cir. 2004) (same).

Kuhn's claim that his sentence of 46 to 96 years of imprisonment was unreasonable, given Pennsylvania's applicable guideline range, does not implicate the laws or the Constitution of the United States. In fact, habeas challenges to a state court's sentencing discretion are unreviewable by a federal court provided that the sentence lies within the statutory guidelines, is not based upon arbitrary considerations, and the defendant's constitutional

- 23 -

rights were not violated. See Estelle, 502 U.S. at 67–68 (explaining that federal habeas courts are not permitted to review questions of state law); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (same); Wainwright v. Sykes, 433 U.S. 72, 81 (1977) (indicating that questions of state substantive law are not cognizable on federal habeas review); Townsend v. Burke, 334 U.S. 736, 741 (1948) (stating that when a state "sentence [is] within the limits set by the statute, its severity would not be grounds for [habeas] relief"); see also Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42–43 (3d Cir. 1984) (finding that court's sentencing discretion was not cognizable in federal habeas petition); Smith v. Kerestes, Civ. A. No. 08–0061, 2009 WL 1676136, at *16 (E.D. Pa. June 15, 2009) (rejecting petitioner's claim that his state sentence was excessive because "absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds statutory limits").

Kuhn's sentence falls squarely within the applicable state sentencing guidelines and was based upon facts specific to the offenses for which he was convicted. Accordingly, his sentence was applied within the broad limits established by the Constitution, and his claim concerning either the length, or discretionary imposition, of his sentence fails to raise a cognizable claim for federal habeas relief.

C. **"Violation of Petitioner's Fourth Amendment right against illegal seizure when Petitioner's illegal arrest in companion case was used to hold him to investigate the instant case."**

Petitioner claims that his "illegal arrest in a companion case is 'fruit of the poisonous tree" in the instant case" and a violation of his Due Process and Fourth Amendment, "as this illegal arrest in the companion case was found to violate PA law (due process) and a question remains for a 4th Amend violation." (Doc. 1 at 8).

The Pennsylvania Superior Court rejected this claim as follows:

Appellant first contends that the trial court erred in denying his motion to suppress on the basis that his arrest had been unlawful. Appellant's Brief at 12. We note that Appellant is resurrecting an issue recently disposed of by a panel of this Court in the companion case of **Commonwealth v. Kuhn**, 820 MDA 2009, unpublished memorandum (Pa. Super. filed August 18, 2010):

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. **Commonwealth v. Bomar**, 573 Pa. 426, 826 A.2d 831, 842 (2003),

Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." **Commonwealth v. Mistler**, 590 Pa. 390, 912 A.2d 1265, 1269 (2006) (quoting **Commonwealth v. Nester**, 551 Pa. 157, 709 A.2d 879, 881 (1998)). Thus, the conclusions of law of the court's below are subject to our plenary review. **Mistler, supra**; **Commonwealth v. Morley**, 545 Pa. 420, 681 A.2d 1254, 1256 n.2 (1996).

**Commonwealth v. Jones**, ___Pa.____, ____, 988 A.2d 649, 654 (2010), petition for **certiorari** filed, 78 USLW 3702 (May 17, 2010).

Appellant contends that the various items seized from his person,[6] his subsequent statements to police, and the DNA swab performed on him, all should have been suppressed as the fruit of the poisonous tree,[7] as they were all derived from an unlawful arrest made without probable cause. We disagree.

"Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." **Commonwealth v. Dommel**, 885 A.2d 998, 1002 (Pa. Super. 2005), **appeal denied**, 591 Pa. 722, 920 A.2d 831 (2007) (quoting **In re C.C.J.**,

---

[6] These items included a digital camera, an IPOD, a pair of glasses, a pack of cigarettes, and a lighter. Appellant also complains that the search of his person also revealed that the lining of his front pants pockets had been removed, which fact was used against him at trial.

[7] **See Wong Sun v. U.S.**, 371 U.S. 471, 487-488 (1963).

799 A.2d 116, 121 (Pa. Super. 2002)). "Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances'." **Id**. (quoting **Commonwealth v. Myers**, 728 A.2d 960, 962 (Pa. Super. 1999)). Furthermore, "probable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.'" **Id**. (quoting **Commonwealth v. Wright**, 867 A.2d 1265, 1268 (Pa. Super. 2005), **appeal denied**, 583 Pa. 695, 879 A.2d 783 (2005), **cert. denied**, 546 U.S. 1104, 126 S.Ct. 1047, 163 L.Ed.2d 879 (2006)).

**Commonwealth v. Williams**, 941 A.2d 14, 27 (Pa. Super. 2008).

The police had sufficient probable cause to arrest appellant. The police had a report from a named individual who indicated that a man was observed peeking into her bedroom window in the early morning hours. Where the informant is a named person, as opposed to either a confidential informant or a tip from an anonymous source, the information is assumed to be trustworthy because the informant risks prosecution for making false reports. **Commonwealth v. Barber**, 889 A.2d 587, 593-594 (Pa. Super. 2005). The informant gave police a detailed description of the suspect, which included the fact that he was wearing a backward-fitting Virginia Teck baseball cap and a long-sleeved shirt, and was fleeing, headed in the direction of Pugh Street. Less than a minute after the report, appellant was seen by police emerging onto Pugh Street, from bushes along the perimeter of the property that abuts the victim's residence.[8] Appellant matched the description of the suspect completely, including the backward-fitting Virginia Teck baseball cap and the long-sleeved shirt. Appellant was then taken into

---

[8] Notes of testimony, 3/30/09 at 94 (Pugh Street property abuts victim's residence).

custody. Under the totality of these circumstances, we find that the police had adequate probable cause to arrest appellant for loitering and prowling at night time.

Finally, as a sub-issue, appellant also contends that a warrantless arrest for a misdemeanor is only proper where the offense is committed in the presence of the police officer. Simply stated, in **Commonwealth v. Elliott**, 599 A.2d 1335 (Pa. Super. 1991), this court held that pursuant to 42 Pa.C.S.A. §8952,[9] a police officer can make a warrantless arrest for any offense, including misdemeanors and summaries, even if not committed in the officer's presence, so long as the officer has probable cause to believe that the offense was committed in his or her jurisdiction. Thus, there is no merit to appellant's claim.

**Kuhn**, 820 MDA 2009, unpublished memorandum, slip. op. at 5-8.

Upon review, we conclude that Appellant is estopped from reasserting his suppression claim. See **Commonwealth v. Gant**, 945 A.2d 228, 229 (Pa. Super. 2008) (instructing that collateral estoppel applies when "(1) the issue decided in the prior adjudication must be identical to the issue presented later; (2) the party against whom estoppel is asserted must be a party, or in privity with a party, to the prior adjudication; and (3) the party against whom estoppel is asserted must have had a fair and full opportunity to litigate the issue in the prior action."). Here, Appellant raises the same sufficiency challenge that was decided

---

[9] **§8952. Primary municipal police jurisdiction**

Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within this primary jurisdiction as to:

    (1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction.

42 Pa.C.S.A. §8952 (in pertinent part).

in the companion case and affirmed by this Court. Trial Court Order, 5/14/09; **Kuhn**, 820 MDA 2009, unpublished memorandum, slip op. at 5-8. Appellant had a fair and full opportunity to litigate the issue in the prior suppression hearing and does not present any new evidence or argument here. Therefore, we decline further review.

(Doc. 17-4 at 48-53, Superior Court Memorandum Opinion).

The Supreme Court has held that a federal habeas court cannot review a Fourth Amendment claim unless the petitioner was denied a full and fair opportunity to litigate it in the state courts. See Stone v. Powell, 428 U.S. 465, 494 (1976). Generally, a petitioner has received a full and fair opportunity to litigate a Fourth Amendment claim if the state has made available a mechanism for requesting the suppression of evidence, irrespective of whether the petitioner actually availed himself of that mechanism. See Boyd v. Mintz, 631 F.2d 247, 250 (3d Cir. 1980). A petitioner has also had a full and fair opportunity to litigate his claim regardless of whether the state courts properly resolved the claim. See Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002). On the other hand, a petitioner has not received a full and fair opportunity if the state's system contains a structural defect that prevented the state from fully and fairly hearing the Fourth Amendment claim. See id.

Rules 578 and 581 of the Pennsylvania Rules of Criminal Procedure permit a defendant to file a pre-trial motion to suppress evidence, thereby

providing a mechanism for presenting Fourth Amendment issues in the Pennsylvania state courts. See Pa. R. Crim. P. 578, 581. Petitioner availed himself of that mechanism. Moreover, as noted above, Petitioner raised his claim in his direct appeal. The Superior Court, finding that Petitioner had a full and fair opportunity to litigate his claim in the suppression hearing conducted in his companion case, as well as on direct appeal, determined that Petitioner was estopped from raising the claim again. Consequently, the Superior Court declined further review.

Nothing in the record before this Court suggests that Petitioner did not receive a full and fair litigation of his Fourth Amendment claim. See, e.g., Marshall, 307 F.3d at 82 (noting that whether a state court incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity analysis). Thus, the Court will deny Petitioner's third ground for relief as barred by Stone. See, e.g., Goins v. Warren, No. 13-4057 (DRD), 2015 WL 1292528, at *3-4 (D.N.J. Mar. 20, 2015) (concluding that habeas petitioner's challenge to the arrest warrant, based on a belief that police officer forged the judge's signature, was barred by Stone).

### D. "Trial counsel was ineffective for failing to object to Detective Aston's testimony during trial."

Petitioner claims that Detective Aston's testimony at trial commented on Petitioner's criminal history, by using the word "pattern" and "no objection was made" by Petitioner's counsel. (Doc. 1 at 10).

Petitioner's final issue of ineffective assistant of counsel, which was raised in his PCRA petition, was argued by PCRA counsel as meritless, in his "No Merit" brief as follows:

> Petitioner claims his trial was prejudiced when Detective Aston mentioned a link between the crime scene and the Defendant was the "pattern" that he used although Petitioner's criminal history was not to be introduced to the jury. (N.T. 274).
>
> Specifically, Detective Aston was asked on cross-examination by Petitioner's attorney is there was anything to link the Petitioner to the crime scene. In response, Detective Aston stated the "manner of operation of how that person performed in that apartment." (N.T. 274). On redirect, the Commonwealth asked Detective Aston to elaborate on that comment which prompted him to say "things that were done in that apartment by the suspect that would link that suspect to a pattern that he used." (N.T. 274).
>
> Reference to the "pattern" is not admitting to the jury proof of Petitioner's criminal history. Furthermore, it was Petitioner's counsel who opened the door by asking if there was anything that linked the crime scene to the Petitioner.
>
> Lastly, if Petitioner's trial counsel was ineffective for opening the door, it is considered harmless error that did

> not so undermine the truth telling process as to warrant a
> new trial.

(Doc. 17-4 at 228). The PCRA court, after giving Petitioner an opportunity to respond to counsel's "No Merit" brief, (Doc. 17-4 at 242), conducted a thorough review of the record, and found Petitioner was not entitled to post-conviction collateral relief. (Doc. 17-4 at 266). The Pennsylvania Superior Court subsequently found no error in the PCRA court's grant of counsels' petition to withdraw and agreed that Kuhn's claims lacked arguable merit. (Doc. 17-4 at 319).

Petitioner has failed to show that the state courts' rulings resulted in a decision that was contrary to or, involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

The transcript reveals that Petitioner's counsel initiated the questioning linking Petitioner to the scene, to which the Commonwealth followed up on redirect by asking Detective Aston to elaborate on the comment. While, Defendant Aston stated that "things were done in that apartment by suspect that would link that suspect to a pattern that he used," there was no mention or reference to Petitioner's criminal record. Thus, there existed no reasonable basis for counsel to object. As such, counsel's performance did

not fall below an objective level of reasonableness, and Petitioner's final claim of ineffectiveness is meritless. Accordingly, the state court's determination that Petitioner's underlying claim lacked arguable merit, and that he failed to demonstrate that he was prejudiced by defense counsel's failure to object to Detective Aston's testimony, is not contrary to, or an unreasonable application of Strickland.

### IV.  **Certificate of Appealability**

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Kuhn from appealing the order denying his petition so long as he seeks, and obtains, a

certificate of appealability from the Third Circuit Court of Appeals. <u>See</u> Fed. R. App. P. 22(b)(1).

## V.    <u>Conclusion</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied.

An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 3, 2020**
15-0015-01